UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHENYU WANG,<br>Petitioner,<br>v.<br>WARDEN, et al.,<br>Respondents. | Case No. 5:26-cv-04699-PD<br><br>**ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS AND ORDERING RELEASE**<br><br>**A# 242-515-559** |

Chenyu Wang ("Petitioner") filed a counseled Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 seeking immediate release from Respondents' custody at the Adelanto ICE Processing Center in Adelanto, California, or a constitutionally adequate individualized custody determination. Dkt. No. 1. The Court has considered the Petition, attached declarations and exhibits, Respondents' Answer, and Petitioner's Traverse and exhibits.

## I. Background

Petitioner is a 22-year-old native and citizen of the People's Republic of China. He was admitted to the United States on or about September 3, 2025, on a nonimmigrant B-2 visitor for pleasure, with authorization to remain in

the United States for a temporary period not to exceed March 2, 2026. He remained in the United States beyond March 2, 2026, without authorization from the Department of Homeland Security ("DHS"). Dkt. No. 1, Petition ¶¶ 8-10.

On July 2, 2026, Petitioner, through counsel, filed a Form I-589, Application for Asylum and for Withholding of Removal with U.S. Citizenship and Immigration Services ("USCIS"). Petitioner's asylum application and supporting personal statement describe past persecution and fear of future persecution in China on account of his Christian religious beliefs and practice. *Id.* ¶ 11; Dkt. No. 1-4 at 15-41.

On August 5, 2026, Petitioner appeared, as scheduled, at a USCIS Support Center for routine biometrics appointment in connection with his pending Form I-589 application. While attending that appointment, Petitioner was taken into custody by DHS. On August 5, 2026, Petitioner was served with a Notice to Appear (Form I-862) charging him as inadmissible under 8 U.S.C. § 1227(a)(1)(B) ("Any alien who is present in the United States in violation of this chapter or any other law of the United States, or whose nonimmigrant visa (or other documentation authorizing admission into the United States as a nonimmigrant) has been revoked under section 1201(i) of this title, is deportable."). Petition ¶ 13.

DHS has not issued a Form I-286, Notice of Custody Determination, or otherwise set, denied, or addressed bond in any way. No custody redetermination hearing has been requested of, or held by, the Immigration Court. *Id.* ¶ 16.

Petitioner's aunt submitted a declaration in support of his Petition stating that she is a lawful permanent resident of the United States and is available and willing to serve as Petitioner's custodian and sponsor; she is

willing to have Petitioner reside with her, to support him while his asylum case is pending, and to ensure his appearance at all future hearings. *Id.* ¶ 20.

## II. Petition, Answer and Traverse

The Petition alleges (1) violation of due process because Petitioner's arrest and detention are arbitrary and not reasonably related to any legitimate purpose of civil immigration detention; (2) violation of 8 U.S.C. § 1226(a) in that DHS has not issued a Form I-286 or any other custody determination, and no custody determination has been conducted; (3) continued detention without prompt individualized determination violates due process; (4) Respondents' failure to facilitate Petitioner's compliance with USCIS's biometrics notice threatens to deprive Petitioner of a full and fair opportunity to pursue his asylum application.

Respondents filed an Answer stating that Petitioner is entitled to an initial bond hearing pursuant to *Rodriguez Vasquez v. Bostock*, 183 F.4th 1160 (9th Cir. 2026). Respondents argue that Petitioner is properly detained because this is his first detention following the expiration of his B-2 visa in March 2026 and that Petitioner is detained under 8 U.S.C. § 1226(a), pursuant to which he is entitled to request a custody determination. Respondents argue that Petition has an adequate remedy for his complaint of unjustified detention, which is to request a bond hearing under § 1226(a).

In his Traverse, Petitioner argues that his detention without any pre-deprivation process deprived him of procedural due process under the standard set forth in *Mathews v. Eldridge*, 424 U.S. 319, 336 (1976).

## III. Discussion

As set forth above, the parties agree and the record confirms that Petitioner was admitted on a B-2 visa, he is charged as removable under 8 U.S.C. § 1227(a)(1)(B), and his detention is discretionary detention under 8 U.S.C. § 1226(a). In his second and third grounds for relief, Petitioner

contends that Respondents did not issue him a Form I-286 or any other custody determination when they detained him and no custody determination has been conducted, in violation of both due process and § 1226(a). The Court agrees.

**A. Detention Under 8 U.S.C. § 1226(a)**

Section 1226(a) "sets out the general rule" for "the arrest, detention, and release" of "aliens present in this country" "who are believed to be subject to removal." *Nielsen v. Preap*, 586 U.S. 392, 396–97 (2019). Under Section 1226(a) and its implementing regulations, a DHS officer may arrest and take into custody a noncitizen "under the authority of Form I–200, Warrant of Arrest" issued by certain designated supervisory officers. 8 C.F.R. § 236.1(b). The Government "may" detain such individuals "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a).

DHS officers also have the authority to conduct a warrantless arrest if there is probable cause to believe a person is subject to removal and "is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2). *See generally Tejeda-Mata v. INS*, 626 F.2d 721, 725 (9th Cir. 1980). Such individuals must be promptly brought before an examining officer to determine if the person is subject to removal, 8 C.F.R. § 287.3(a), and referred for a custody determination within "48 hours of the arrest" absent an emergency or other extraordinary circumstances. 8 C.F.R. § 287.3(d).

Regardless of whether the individual is arrested pursuant to a warrant or DHS's warrantless arrest authority, DHS officers conduct an initial custody determination to decide whether to release or detain the person. 8 C.F.R. § 1236.1(c)(8). Unless the person is subject to mandatory detention under Section 1226(c) based on their criminal history, DHS has "the discretion

either to detain the alien or to release him on bond or parole." *Nielsen*, 586 U.S. at 396. The DHS officer must release the noncitizen if they "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8).

DHS utilizes a Notice of Initial Custody Determination, Form I-286, to document its custody determinations. 8 C.F.R. § 236.1(g). The Form I-286 includes "the formal mechanism—a box the detainee may check—to immediately request" that an Immigration Judge ("IJ") review DHS's custody determination at a custody redetermination hearing (i.e., a bond hearing). *Garcia-Maya v. Blanche*, No. 2:26-cv-01513-RFB-BNW, 2026 WL 1965886, at *8 (D. Nev. July 7, 2026).

If the noncitizen checks this box, or otherwise requests a custody redetermination hearing, an IJ will set a hearing in Immigration Court. *See* 8 C.F.R. §§ 1236.1(d)(1), 1003.19. "If at this hearing the detainee demonstrates by the preponderance of the evidence that he is not 'a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk,' the IJ will order his release." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022) (quoting *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)). The noncitizen can "appeal an adverse decision to the BIA." *Id.* (citing 8 C.F.R. § 236.1(d)(3)). Alternatively, "an individual detained pursuant to § 1226(a) may request an additional bond hearing whenever he experiences a material change in circumstances." *Id.* (citing 8 C.F.R. § 1003.19(e)). "The same procedures apply to this new hearing, and its outcome is also appealable to the BIA." *Id.* The noncitizen may also seek judicial review of the immigration courts' bond determination through a habeas petition challenging the determination as constitutionally deficient,

legally erroneous, or an abuse of discretion. *See Martinez v. Clark*, 124 F.4th 775, 784 (9th Cir. 2024).

Reviewing this statutory and regulatory framework, the Ninth Circuit has observed that "Section 1226(a) and its implementing regulations provide extensive procedural protections that are unavailable under other detention provisions, including several layers of review of the agency's initial custody determination, an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." *Rodriguez Diaz*, 53 F.4th at 1202.

**B. The Constitutional Grounding for § 1226(a) Procedures**

The Supreme Court has long recognized that due process requires that immigration detention bear a "'reasonable relation'" to a non-punitive purpose. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (quoting *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)). There are two permissible non-punitive purposes for detention under the immigration laws: ensuring a noncitizen's appearance at removal proceedings or removal and preventing danger to the community. *Id.* at 690–92. In the context of immigration detention, "it is well-settled that due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017) (cleaned up). *See also Padilla v. United States Immigr. & Customs Enf't,* 192 F.4th 894, 914 (9th Cir. 2026) (recognizing that "the principle that the government cannot arbitrarily detain people, including noncitizens, has been a central tenet of British and American legal traditions since the thirteenth

century" and discussing the history of protections against arbitrary detention applied to noncitizens).

Section 1226(a) and its implementing regulations establish procedures to ensure that the Government only detains noncitizens where doing so advances its legitimate interests in preventing danger and mitigating risk of flight. Without such protections, there is an unacceptably high risk that the noncitizen's confinement is not "reasonably related" to a legitimate purpose. *Zadvydas*, 533 U.S. at 690; *Pablo Sequen v. Albarran*, 806 F. Supp. 3d 1069, 1085 (N.D. Cal. 2025) ("Noncitizens subject to § 1226(a) therefore have a statutory as well as constitutional interest in remaining out of custody unless they pose a threat to the public or a flight risk.").

The mechanism for making such evaluations is the initial custody review, which ensures that DHS only detains a noncitizen where officers determine that detention is justified on an individualized basis and engages "in a deliberative process prior to, or contemporaneous with, the initial decision to strip a person of the freedom that lies at the heart of the Due Process Clause." *Kelly v. Almodovar*, No. 25-cv-6448-AT, 2025 WL 2381591, at *3 (S.D.N.Y. Aug. 15, 2025) (quotations omitted). It also "create[s] a record that permits meaningful review of whether the required procedure occurred." *Dos Reis v. McShane*, No. 26-cv-3775, 2026 WL 1746649, at *5 (E.D. Pa. June 17, 2026) ("A contemporaneous, individualized custody determination [ ] require[s] ICE to explain why detention, rather than release on conditions, is necessary for *this* Petitioner.") (emphasis in original). And it is the "mechanism" by which noncitizens are advised that they can seek review before an IJ and provided an opportunity to request such review by checking a box on the Form I-286. *See Garcia-Maya*, 2026 WL 1965886, at *8.

Absent an initial custody review, a noncitizen may not be aware that they are eligible for a bond hearing or know how to request one. *See*

*Castellanos Franco v. Warden, Adelanto ICE Processing Ctr.*, et al., No. 5:26-cv-05549-MWC-DMK, 2026 WL 2922670, at *4–5 (C.D. Cal. Sept. 29, 2026) ("Respondents' 'failure to provide petitioner with any of § 1226(a)'s 'substantial procedural protections,' . . . including the right to request an initial custody re-determination before an IJ under 8 C.F.R. § 1236.1(d), violated procedural due process.' ") (quoting *Rivas Garcia v. Current or Acting Field Dir.*, No. 1:26-cv-03245-DAD-SCR, 2026 WL 1265937, at *4 (E.D. Cal. May 8, 2026)). And even when a noncitizen requests a bond hearing before an IJ, it may be weeks or months until the hearing is scheduled. *See generally Trujillo-Hernandez v. Mullin, et al.*, No. 5:26-cv-03282-SP, 2026 WL 2826326, at *5 (C.D. Cal. Sept. 21, 2026).

In short, without an initial custody determination, a person could be confined for a prolonged period without any determination that such a profound deprivation of their liberty is actually justified.

Considering the importance of the procedures available under Section 1226(a) at the outset of an individual's detention, numerous courts have recognized failure to provide an initial custody determination is not only a statutory violation, but also a violation of a noncitizen's due process rights. *Lopez Esteban v. Warden-Facility Adm'r of Nw. Processing Ctr.*, No. 2:26-cv-02548-JHC, 2026 WL 2686824, at *4 (W.D. Wash. Sept. 14, 2026) (quoting *Pastrana-Beltran v. Mullin*, 2026 WL 1398609, at *2 (E.D.N.Y. May 19, 2026) and collecting cases). *See also Occeus v. Warden, California City Detention Facility*, No. 1:26-cv-07057-TLN-SCR, 2026 WL 2858725, at *1 (E.D. Cal. Sept. 23, 2026) ("Petitioner was denied statutory and regulatory protections under § 1226(a) and 8 C.F.R. § 1236.1(d) for a period of months in this case, which constitutes a separate procedural due process violation."); *Angulo-Barbosa v. Blanche, et al.*, No. 2:26-cv-02102-RFB-BNW, 2026 WL 2676815, at *2 (D. Nev. Sept. 11, 2026) ("the Court finds Petitioner's detention without

notice of an initial custody determination violates Petitioner's right to substantive and procedural due process"); *Rodriguez v. Knight*, No. 1:26-cv-00505-BLW, 2026 WL 2641448, at *3 (D. Idaho Sept. 8, 2026) ("the Government violated his due process rights by denying him the individualized custody determination required under § 1226(a)"); *Zurita Navarro v. Warden, Cent. Valley Annex Det. Facility*, No. 1:26-cv-05661-DAD-SCR, 2026 WL 2294963, at *2 (E.D. Cal. Aug. 10, 2026); *J.T.G. v. Genalo*, No. 26-cv-4521-AT, 2026 WL 1724325, at *4 (S.D.N.Y. June 15, 2026); *Curimilma Quille v. Blanche*, No. 26-cv-2818-HG, 2026 WL 1453889, at *4 (E.D.N.Y. May 22, 2026).

**C. Respondents' Failure to Comply with § 1226(a)**

Respondents do not address whether ICE conducted an initial custody review when they detained Petitioner. Respondents did not submit a Form I-286 for Petitioner or any evidence suggesting that an initial custody review was completed. The Court therefore concludes that ICE failed to provide Petitioner with an initial custody review at the outset of detention. Based on these uncontested facts, the Court agrees with Petitioner that his detention violated 8 U.S.C. § 1226(a) and due process for the reasons discussed above.

The Court must determine, then, the proper remedy for the violation of Petitioner's rights. Respondents argue that Petitioner "appears to be entitled to request and receive an initial bond hearing" pursuant to *Rodriguez Vazquez*. Dkt. No 9. at 2. However, as many of the courts to address this issue have concluded, the "failure to comply with the procedures set forth by 8 U.S.C. § 1226(a) and its implementing regulations during a petitioner's initial detention renders that detention unlawful and that unlawfulness cannot be cured through belated compliance with statutory requirements." *Zurita Navarro*, 2026 WL 2294963, at *2 (E.D. Cal. Aug. 10, 2026); *J.T.G.*, 2026 WL 1724325, at *4 ("Because J.T.G.'s detention was unlawful from the outset, the

government cannot cure its procedural failures by providing a custody determination three weeks later."). *See also Lopez Esteban*, 2026 WL 2686824, at *4 (collecting cases). "The suggestion that government agents may sweep up any person they wish without consideration of dangerousness or flight risk, so long as the person will, at some unknown future date, be allowed to ask some other official for his or her release, offends the ordered system of liberty that is the pillar of the Fifth Amendment." *Gonzalez v. Joyce*, No. 25-cv-8250-AT, 2025 WL 2961626, at *5 (S.D.N.Y. Oct. 19, 2025). Petitioner has now been confined since August without any determination that this lengthy detention is warranted. A bond hearing belatedly conducted at some point in the future is "'no substitute'" for initial custody determination that would have established "a lawful basis for detention in the first instance." *Garcia-Maya*, 2026 WL 1965886, at *8 (quoting *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 497 (S.D.N.Y. 2025)).

Because Petitioner's detention has been unlawful from the outset, the Court concludes that the "most appropriate remedy for this violation would be to return Petitioner to the previous status quo by releasing him from detention." *Reyes v. Santacruz, Jr., et al.*, No. 26-cv-3394-E, 2026 WL 2069974, at *2 (C.D. Cal. July 13, 2026). The Ninth Circuit has recognized that "the purpose of habeas remedies is to put the defendant back in the position he would have been in if the constitutional violation never occurred." *Lujan v. Garcia*, 734 F.3d 917, 935 (9th Cir. 2013) (cleaned up). *See also United States v. Stein*, 541 F.3d 130, 146 (2d Cir. 2008) (recognizing that the "[t]he appropriate remedy for a constitutional violation is one that as much as possible restores" a litigant "to the circumstances that would have existed had there been no constitutional error") (cleaned up). This principle has particular force where, as here, the protections at issue are intended to prevent an unlawful detention in the first place. *See United States v. Morrison*, 449 U.S.

361, 364 (1981) (observing "the general rule that remedies should be tailored to the injury suffered").

Finally, the Court observes that Respondents do not argue that Petitioner is in fact a danger or flight risk, or that there is any other basis for his continued detention. Nor does the record reveal any justification for Petitioner's detention, particularly in light of his pending application for asylum and withholding of removal and the availability and willingness of his aunt, a lawful permanent resident, to serve as his custodian and sponsor. *See* Dkt. No. 1-3.

**IV. Order**

For the foregoing reasons, the Court concludes that Petitioner is entitled to habeas relief. It is therefore ORDERED that Judgment be entered granting the Petition on the second and third grounds, and that the remaining counts be dismissed without prejudice.

Petitioner Chenyu Wang (A# 242-515-559 ) is **ordered released** within 24 hours of this Order on reasonable conditions of supervision. This Order does not provide Petitioner with blanket immunity from future detention – that relief is likely beyond the Court's jurisdiction – but any future enforcement actions after release must comply with Due Process requirements.

At the time of release, **Respondents are ordered** to return to Petitioner any of Petitioner's personal belongings that were seized from her, including all identification, work authorization, or other official documents.

**Respondents are further ordered** to file, within three days of Petitioner's release, a status report (1) confirming Petitioner's release, and (2) the return to Petitioner of her personal belongings, including the above-listed items.

IT IS SO ORDERED.

DATE: November 17, 2026

Patricia Donahue
United States Magistrate Judge